UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARIANNE T. O'TOOLE, as Trustee of the Estate of MARY BEA FRATTO,

                    Plaintiff,

-against-

COUNTY OF ORANGE,

                    Defendant.

No. 16 Civ. 2059 (NSR)

**OPINION & ORDER**

---

NELSON S. ROMÁN, United States District Judge

Plaintiff Marianne T. O'Toole, proceeding as the bankruptcy trustee of Mary Bea Fratto, brings this action against Fratto's former employer, the County of Orange ("Defendant"). Plaintiff alleges that throughout Fratto's tenure at the Orange County Correctional Facility ("OCCF" or defendant), from November 2012 to October 2013, Defendant discriminated against Fratto based on her sex, and, when she objected, retaliated against her, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*. Defendant now moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint in its entirety. For the following reasons, Defendant's motion to dismiss is DENIED.

## BACKGROUND

### I. Facts Alleged[1]

The following facts – which are taken from the Complaint, documents it incorporates, and matters of which the Court may take judicial notice – are construed in the light most favorable to

---

[1] The Court assumes the truth of the facts alleged in Plaintiff's Complaint, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and considers documents which are either incorporated by reference, or integral to the claims asserted,



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/31/2017

Plaintiff.  *See, e.g.*, *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013); *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009); *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

Defendant is the Orange County Correctional Facility ("OCCF"), a unit within the Orange County Sheriff's Office.  (Complaint ("Compl.") ¶ 7, ECF No. 1.)

Fratto, a female corrections officer, was hired by the OCCF in November 2012 for a probationary term of one year.  (Compl. ¶¶ 7-9.)  Fratto commenced her employment along with twelve other probation officers.  (*Id*. ¶ 8.)  Shortly after she began working at OCCF, Fratto "began to receive much attention" from Sergeant Jeffrey Long ("Sergeant Long"), (*id*. ¶ 10), which she had reduced to friendly and helpful conduct until she learned "that [he] had a history of making romantic/sexual advances toward female officers."  (*Id*. ¶ 11.)  Soon thereafter, co-workers started to publicly remark that Fratto "was having sexual relations with S[ergeant] Long."  (*Id*. ¶ 12.)  For example, one officer "directly told [] Fratto that she should stop having sex with S[ergeant] Long," while others lewdly remarked, "[i]t's not who you know, it's who you blow."  (*Id*. ¶¶ 13-14.)  This harassment continued for about four months.  Believing "that the jail was filled with untrue rumors that she was sleeping with S[ergeant] Long," Fratto reported her concerns to Kathy Critelli, an administrator at the OCCF; Critelli recommended Fratto file a written complaint.  (*Id*. ¶¶ 15-17.)  Despite fearing retaliation, Fratto filed a formal written complaint of harassment in May 2013.  (*Id*. ¶ 16.)

Around the same time, Captain Jacquelyn Bennett ("Captain Bennett") met with Fratto to discuss the harassment complaint.  While Captain Bennett assured Fratto that the OCCF would

---

therein.  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

shield her from any retaliatory measures, Plaintiff believes that Captain Bennett "resented [Fratto] for her perceived relationship with S[ergeant] Long and for [filing] a formal complaint of harassment." (*Id*. ¶¶ 18-19.) By way of example, in July 2013 Captain Bennett questioned Fratto about "allegedly failing to properly supervise a unit of female inmates during a particular shift." (*Id*. ¶ 20.) Specifically, Captain Bennett claimed a videotape existed showing that Fratto "had allowed a female inmate to nearly strike her without any repercussion." (*Id*. ¶¶ 20-21.) When Fratto tried to explain the inmate had not tried to strike her and "only moved her hand in a non-threatening gesture," Captain Bennett responded, "[a]re you lying about this like you were lying about Sergeant Long?" (*Id*. ¶¶ 22-23.) The Complaint cites this exchange as an example of retaliation given that Fratto "was never disciplined or written up in any manner concerning her supervision of the female inmates." (*Id*. ¶ 24.)

Fratto was fired in October 2013, (*id*. ¶ 25), when she was told by two ranking officers "that they did not know why" she had been terminated. (*Id*. ¶ 26.) Fratto believes, as she alleged in her Complaint, that she would not have been fired "had [she] been a man, or had she not complained of gender-based harassment." (*Id*. ¶ 32.) More specifically, while the other "male probationary officers … regularly violated department rules," they were never disciplined and even those with below average performance reviews passed their probationary periods or were retrained. (*Id*. ¶¶ 8, 28-29.) Only one other member of Fratto's class had been involuntarily terminated – a male officer – for having falsified his pistol permit. (*Id*. ¶ 27.)

Fratto filed a charge of discrimination (alleging sex discrimination and retaliation) with the EEOC in February 2014. Plaintiff filed the instant case on March 21, 2016. (*See* Compl. ¶ 7, ECF No. 1). In due course, Defendant moved to dismissed under Rule 12(b)(6), arguing that Plaintiff

failed to state a Title VII claim. (*See generally* Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 12; Def.'s Mem. in Supp. ("Def.'s Mem."), ECF No. 14.)

## STANDARD ON A MOTION TO DISMISS

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint and requires a court to determine whether the facts alleged are sufficient to show that the plaintiff has a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). When ruling on a Rule 12(b)(6) motion, a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g., Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). To survive such a motion, however, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In assessing whether this standard has been met, courts take "all factual allegations contained in the complaint" as true, *Twombly*, 550 U.S. at 572, and "draw all inferences in the light most favorable to the non-moving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (citation omitted).

A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

**DISCUSSION**

Plaintiff alleges that the County of Orange discriminated and retaliated against her on the basis of her sex in violation of Title VII. The Court first addresses Plaintiff's gender discrimination claims, before turning to her retaliation claims.

**I.        Title VII Gender Discrimination Claim**

We turn now to Plaintiff's claim that the County of Orange discriminated against Fratto on the basis of her sex, in violation of Title VII. Plaintiff's "Title VII discrimination claim is governed by *McDonnell Douglas*." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 19-20 (2d Cir. 2015) (citing *Ya-Chen v. City Univ. of N.Y.*, 805 F.3d 59, 73-74 (2d Cir. 2015)). "Under the *McDonnell Douglas* framework, [the plaintiff] bears the burden of establishing a prima facie case of discrimination by showing (1) [s]he belonged to a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Tolbert v. Smith*, 790 F.3d 427, 435 (2d Cir. 2015) (internal quotation marks omitted). But "a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas,* at least as the test was originally formulated, to defeat a motion to dismiss." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (internal quotation marks omitted). Indeed, as concerns the fourth prong, "a plaintiff need only give plausible support to a *minimal inference* of discriminatory motivation." *Id.* (internal quotation marks omitted) (emphasis added). Nevertheless, "a discrimination complaint … must [still] at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (alterations and internal quotation marks omitted). Additionally, "the elements of a *prima facie* case may be used

as a prism to shed light upon the plausibility of the claim." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 n. 9 (2d Cir. 2015) (internal quotation marks omitted); *accord Vega,* 801 F.3d at 84 n. 7 (same).

Plaintiff alleges that Fratto was subject to discrimination on the basis of gender. The first three elements of the *prima facie* case are not in dispute: the Complaint fairly alleges that Fratto is a member of a protected class, was qualified for her position,[2] and was terminated.[3] The Court will address the fourth – and only disputed – element: discriminatory intent.

### a. Discriminatory Intent

Plaintiff's discrimination claims appear to be based on Fratto's termination. (*See* Compl. ¶¶ 25-33.) Fratto plausibly alleges – albeit by a *razor thin margin* – some facts which indicate that she was terminated because of her gender. For example, Plaintiff asserts that OCCF's refusal to extend her employment is evidence of its bias against her (Compl. ¶ 31), and she provides reasons to believe that OCCF's actions were the product of invidious sex-based discrimination. (*Id*. ¶¶ 28-29, 32.) Thus, Plaintiff's Title VII gender discrimination claim survives as a matter of law at this stage in the litigation.

The law in this Circuit is clear that the "*sine qua non*" of a Title VII discrimination claim is that "the discrimination must be *because of* [a protected characteristic]." *Henry v. NYC Health*

---

[2] Plaintiff's allegation that she was employed as a probation officer, and her further allegation that she "was never disciplined or written up in any manner concerning her supervision of the female inmates," satisfies the relatively minimal burden required to establish this second element. *See, e.g., Slattery v. Swiss Reinsurance Am. Corp.,* 248 F.3d 87, 92 (2d Cir.2001) ("[A]ll that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that [s]he satisfies the employer.").

[3] To constitute an adverse employment action in the context of a discrimination claim, an action must cause "a materially adverse change in the terms and conditions of employment." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (internal quotation marks and emphasis omitted); *accord Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007). "To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of such a change include *termination of employment*, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Mathirampuzha*, 548 F.3d at 78 (quoting *Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (emphasis added)).

*& Hosp. Corp.*, 18 F. Supp. 3d 396, 407 (S.D.N.Y. 2014) (quoting *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (internal quotation marks omitted)); *see also Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("[M]istreatment at work … is actionable under Title VII only when it occurs *because of* an employee's sex, or other protected characteristic." (emphasis added)).

Defendant primarily challenges Plaintiff's proof of the discriminatory intent requirement, and urges this Court that there could be no discrimination "because of sex" where the alleged rumors relate to Fratto's alleged sexual misconduct, rather than Fratto's sex or gender. (*See* Def.'s Mem. at 8.) Plaintiff confirms this view by indicating that what made Bennett "resent[]" Fratto was the fact that the rumors and official complaint touched on matters of sexuality, *i.e.* Fratto's purported sexual relationship with Sergeant Long, and not that it was a form of sex discrimination. (Compl. ¶¶ 19-24.) The only basis for linking Bennett's adverse action to Fratto's sex is the fact that the rumors were about Fratto sleeping with Sergeant Long, and potentially only women had ever been accused of sleeping with Sergeant Long. In some cases, this connection to plaintiff's sex has sufficed to support the inference that there was a sex-specific character to the course of conduct. *See See Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994) (holding that a reasonable jury could find discrimination based on sex where the harassment in question "relied on sexual epithets [and] offensive, explicit references to women's bodies and sexual conduct"). Here, Defendant argues that even if "statements related to the rumored sexual relationship between Fratto and [Long]," "were considered true for purposes of the instant motion, they are still insufficient to establish gender discrimination." (Def.'s Mem. at 8.) This argument, while it does point to a relevant evidentiary consideration, cannot, however, end the necessarily individualized and fact-sensitive inquiry into why Fratto was treated as she was.

Fratto first alleges that she was subjected to disparate treatment on the basis of gender. *See, e.g.*, Compl. ¶ 32 ("had []Fratto been a man, or had she not complained of gender-based harassment, she would not have been fired"). And these allegations of gender-based disparate treatment are not wholly conclusory. According to the Complaint, at least some similarly situated male employees received more favorable treatment than Fratto. For example, Fratto claims that "[o]ther male probationary officers who regularly violated departmental rules, [such as] appearing late for lineups on a regular basis, were not disciplined and passed their probationary periods." (*Id*. ¶ 28). Moreover, while Fratto "was never disciplined or written up in any manner concerning her supervision of the female inmates," (*id*. ¶ 24), she was terminated without an explanation or offer to retrain. (*Id*. ¶¶ 25, 29.) The law permits a plaintiff to raise a plausible inference of discrimination by alleging "preferential treatment given to similarly situated individuals," *Perry v. State of N.Y. Dep't of Labor*, 08-CV- 4610 (PKC), 2009 WL 2575713, at *2 (S.D.N.Y. Aug. 20, 2009), *aff'd,* 398 F. App'x 628 (2d Cir. 2010), so long as the alleged comparators are "similarly situated in all *material* respects," *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (emphasis added). Because Fratto plausibly alleges that the male colleagues who purportedly received superior treatment were similarly situated in all relevant respects – i.e., that those male officers who violated department rules were (1) had similar levels of experience and (2) ultimately retained, while Fratto was not – her assertions of differential treatment permit a plausible inference of gender discrimination. The Court notes, however, that while Plaintiff's sex discrimination allegations meet the *de minis* burden at this stage, the facts – as alleged – appear to sound more strongly as a hostile work discrimination claim than a gender discrimination one.

Finally, Defendants argument that Plaintiff was fired for failing to properly supervise her unit is immaterial. (Def.'s Reply Mem. ("Def.'s Reply") at 3-4, ECF No. 17.) More specifically,

Defendant points to Fratto's EEOC complaint to allege that Plaintiff herself acknowledges that she "was embarrassed" of the situation with her inmate unit "and when question [] did not admit it," as true. (*See* Hyun Chin Kim in Reply ("Kim Reply Decl.") Ex. C, ECF No. 17.) Whether an employer had a nondiscriminatory reason for firing a plaintiff is a question that a court reaches only at step two of the *McDonnell Douglas* framework, and the Second Circuit instructed in *Littlejohn* that, in order to survive a motion to dismiss, "[t]he plaintiff cannot reasonably be required to allege more facts in the complaint than the plaintiff would need to defeat a motion for summary judgment *made prior* to the defendant's furnishing of a non-discriminatory justification." *Littlejohn,* 795 F.3d at 311 (emphasis added); *see also id.* at 312 ("[B]ecause this appeal involves review of a motion to dismiss, we focus only on whether the allegations in the complaint give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a litigation."). Thus, Fratto need only plead sufficient facts to show that she could plausibly satisfy the requirements of *step one* of the *McDonnell Douglas* framework – that is, to show that she is entitled to the initial presumption of discriminatory motivation. Here, Plaintiff plausibly alleges that (1) as a woman, she was unfairly treated when co-workers spread rumors and repeatedly accused her of sleeping with Sergeant Long, and (2) similarly situated male co-workers were extended more opportunities to commit or recover from actual employment infractions. Whether Defendant will ultimately be able to rebut that presumption because it had a non-discriminatory reason for firing Fratto is irrelevant at this stage of the litigation. Accordingly, in light of *Littlejohn,* Defendant's motion to dismiss Fratto's discrimination claims under Title VII must be, and is, denied.

## II. Title VII Retaliation Claim

In addition to her claim of gender discrimination, Plaintiff also alleges that Defendant retaliated against her in violation of Title VII. Specifically, Plaintiff alleges that after she reported to Captain Bennett conduct she believed to be discriminatory, she suffered adverse employment consequences, including being accused of lying about "failing to properly supervise a unit of female inmates during a particular shift." (Compl. ¶ 20.) The retaliation culminated, she argues, after she returned from vacation in late October 2013, when she was then terminated without explanation. (*Id*. ¶¶ 25-26.) According to the Complaint, Fratto "was never disciplined or written up." (*Id*. ¶ 24.)

At the motion to dismiss stage for a Title VII retaliation claim, "the allegations in the complaint need only give plausible support to the reduced *prima facie* requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Littlejohn*, 795 F.3d at 318. Meaning that to establish a presumption of retaliation at this initial stage of litigation, a plaintiff must present evidence that shows "that (1) he [or she] was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and the materially adverse action." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) (international quotation marks omitted). The governing standard is an objective one: "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which … means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). The same standard applies for retaliation claims under Title VII. *Hicks v. Baines*, 593 F.3d 159, 163 (2d Cir. 2010).

Defendant challenges the sufficiency of Plaintiff's retaliation claims on several grounds, including that: (1) courts have rejected notions that accusation of sexual misconduct constitutes sex discrimination and (2) Fratto's Complaint relates to statements only about her rumored sexual activity, rather than her gender. (*See* Def.'s Mem. at 10.)

The Second Circuit has emphasized that, in the context of employment discrimination cases, courts should evaluate the facts holistically rather than "view individual incidents in isolation" or in a "piecemeal fashion." *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012) (internal quotations omitted); *cf. Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 76 (2d Cir. 2016 ("The district court erred when it failed to view [a plaintiff's] evidence as a whole and instead set aside each piece of evidence after deeming it insufficient …."). With this mandate in mind, the Court addresses each of constituent element of Fratto's retaliation claim and finds that Plaintiff's claim are sufficient to survive Defendant's motion to dismiss.

Plaintiff's allegations are plainly sufficient to satisfy the first two prongs of the *prima facie* test. First, Plaintiff's written complaint of harassment qualifies as "protected activity," and her alleged internal complaints to superiors Critelli and Bennett arguably do as well. (Compl. ¶¶ 15-16, 18); *see Littlejohn*, 795 F.3d at 317 (explaining that § 704(a)'s opposition clause protects formal and informal protests of discriminatory practices generally, including making complaints to management).[4] And second, Defendant was plainly aware of it, *see Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) (requiring nothing more than "general corporate knowledge").

---

[4] The Court notes that in addition to conduct related to the instant lawsuit, Plaintiff alleges that "a female nurse" was also "fired after she lodged a complaint of sexual harassment against [] Long." (Compl. ¶ 30.)

Further, Plaintiff also alleges that she suffered adverse consequences for engaging in these protected activities. "A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Johnson v. J. Walter Thompson U.S.A., LLC*, No. 16-CV-1805 (JPO), 2016 WL 7217847, at *12 (S.D.N.Y. Dec. 13, 2016) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal citations omitted)). "To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Galabya* 202 F.3d at 640. For instance, "[a] materially adverse change might be indicated by *a termination of employment*, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices …." *Id.* (emphasis added) (internal citations omitted).

Plaintiff claims that Defendant did not extend her employment or offer to retrain her, as they did with "other male officers whose performance was below standard." (Compl. ¶¶ 25, 29.) Plaintiff also alleges that, since filing a written complaint of harassment, Defendant has criticized her work performance (i.e., claiming that Plainitff "fail[ed] to properly supervise a unit of female inmates during a particular shift") and made statements implying that she is not credible or truthful. (*Id*. ¶¶ 20-21, 23.) For instance, Captain Bennett made a statement claiming Fratto "had allowed a female inmate to nearly strike her without any repercussions," (*id*. ¶ 21), and implied that Fratto had lied when she explained "the inmate had not actually tried to striker her, but had moved her hand in a non-threatening gesture while the two were talking." (*Id*. ¶ 22.) A substantially similar action, in this case calling the plaintiff a "liar," have been found to be materially adverse actions in connection with retaliation claims. *See DeLisi v. Nat'l Assoc. of Prof'l Women Inc.*, 48 F.Supp.3d 492, 496 (E.D.N.Y. 2014) (finding that calling plaintiff a "'liar,' or 'complaining about

12

every single thing,'" are not "'petty slights' or 'minor annoyances'" and give rise to a claim of retaliation.). Defendant's conduct, considered as a whole, meets the "objective" standard, as the "employment consequences of a negative nature" resulting from making a complaint could chill other employees from speaking up. *Cox v. Onondaga Cty. Sheriff's Dep't*, 760 F.3d 139, 147 (2d Cir. 2014).

Fourth, Plaintiff has pleaded a sufficient "causal connection" between her protected activity and the alleged retaliatory acts. "A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). Plaintiff alleges that each of the actions – including her scrutinized performance, being called a liar, and being terminated – shortly followed the filing of the written complaint against Long. The relatively short lag time between the alleged complaints (beginning in May 2013) and various retaliatory actions (commencing around July 2013) is sufficient to meet the liberal standard for retaliatory purpose at the motion-to-dismiss stage. *See Vega*, 801 F.3d at 90, 92 (finding a few-month gap between the protected activity and the alleged retaliation to be sufficient to infer retaliatory purpose at the motion-to-dismiss stage); *see also Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001) (declining to "draw[ ] a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship" for the purposes of retaliation claims). Plaintiff thus satisfies the relatively loose causation requirements at the 12(b)(6) stage, as the Court recognizes that the motivation behind each alleged retaliatory action is a question of fact. *Vega*, 801 F.3d at 90.

Considering together Defendant's alleged retaliation before Plaintiff took the first steps toward initiating this lawsuit, in combination with Fratto's protected conduct before she was

terminated, Plaintiff has pleaded enough to survive the 12(b)(6) motion. The further development of Plaintiff's retaliation claims is appropriate under the Second Circuit's direction not to dismiss such claims too early. *See Vega*, 801 F.3d at 90.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED. Defendant shall file an answer or seek a pre-motion conference on any potential non-frivolous and non-repetitive motions to dismiss by **June 21, 2017**. Counsel for all parties are further directed to appear for an initial case management and scheduling conference with the Court pursuant to Fed. R. Civ. P. 16 on **July 14, 2017**, at **10:30 a.m.** in **Courtroom 218** of the Charles L. Brieant, Jr. Courthouse, 300 Quarropas Street, White Plains, New York 10601. The parties shall confer in accordance with Fed. R. Civ. P. 26(f) at least 21 days prior to the conference and attempt in good faith to agree upon a proposed discovery plan that will ensure trial readiness within six months of the conference date. The parties shall also complete a Civil Case Discovery Plan and Scheduling Order and bring it to the conference. The Clerk of Court is respectfully directed to terminate ECF No. 12.

Dated: May 31, 2017
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

14